UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| LEIGH J. QUINTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-2068 (ESH) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

Plaintiff Leigh Quinto is an inmate at the Federal Bureau of Prisons' ("BOPs'") United States Penitentiary in Pollock, Louisiana. (Compl. ¶ 3.) He has filed a complaint against the United States Department of Justice ("DOJ"), alleging violation of the Administrative Procedure Act ("APA"), including the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 551-559. Before the Court are defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. Based on its *in camera* review of the documents at issue and for the reasons set forth herein, the Court will grant defendant's motion and deny plaintiff's motion.

## BACKGROUND

Plaintiff was found guilty of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and was sentenced to a 240-month sentence in 2007. (Pl.'s Statement of Material Facts As To Which There Are No Genuine Issues ["Pl.'s SMF"] ¶ 2.) Plaintiff was initially classified by the BOP as a "medium security inmate" and designated to Edgefield FCI, a medium security BOP facility. (*Id.* ¶ 3; *see also* Def.'s Resp. to Pl.'s Statement of Material Facts As To Which There Are No Genuine Issues ["Def.'s SMF Resp."] at 1 n.1.) After arriving at Edgefield, plaintiff

1

was told that his security classification had been repealed and that he had been re-classified as a "high security inmate." (Pl.'s SMF ¶ 3.) Plaintiff was subsequently designated to USP Pollock, a high security facility. (*Id.*)

In August 2008, plaintiff filed an informal resolution with USP Pollock officials, inquiring as to the reason for his reclassification as high security and requesting that his security management level score be lowered based on his detainer status and age. (*Id.* ¶ 4.) Plaintiff's request was denied, and plaintiff was informed that his re-designation as a high security inmate was based on information received from the United States Attorney's Office, Southern District of Florida. (Pl.'s SMF, Attach. 1 at 2.) Plaintiff was also informed that the AUSA who had provided this information continued to believe that higher security was required for plaintiff, and that plaintiff's Unit Team at Pollock concurred. (*Id.*) As such, plaintiff was told that the Management Variable ("MV") of Greater Security previously applied to him would be extended, and that he would remain at a high security level. (*Id.*)

On September 24, 2008, plaintiff filed a FOIA request with the BOP's Central Office, seeking "any information received by officials at USP Pollock from the United States Attorney's Office, Southern District of Florida, indicating a need for [plaintiff's] higher security designation." (Decl. of Larry Collins ["Collins Decl."], Attach. 1.) On October 14, 2008, Larry Collins, a BOP Paralegal Specialist at the South Central Regional Office (SCRO) conducted a search for records responsive to plaintiff's request and asked the staff at USP Pollock to do the same. (*Id.* ¶ 5.) The staff at Pollock responded to the request and provided the SCRO with five pages of responsive documents. (*Id.*)

On October 17, 2008, the regional counsel for the SCRO responded to plaintiff's FOIA request, indicating that information received by the BOP from other law enforcement agencies

2

regarding inmate security concerns is exempt from release pursuant to FOIA § 552(b)(2) and (b)(7)(F). (*Id.*, Attach. 2; Pl.'s SMF ¶ 8.) The letter neither confirmed nor denied that documents responsive to plaintiff's request had been located. (Collins Decl., Attach. 2) Plaintiff appealed the BOP's response to the Office of Information Policy ("OIP"), which upheld the BOP's "Glomar" response to plaintiff's FOIA request in a letter dated September 24, 2009. (*Id.*, Attach. 3.) The OIP further stated that if records responsive to plaintiff's request did exist, they would be protected from disclosure under FOIA Exemptions 2 and 7(F). (*Id.*)

Plaintiff filed the instant lawsuit on November 3, 2009, challenging the BOP's interpretation of the FOIA exemptions as arbitrary and capricious and arguing that neither Exemption 2 nor 7(F) protects the information he seeks. (Compl. ¶¶ 11-16.) Defendant filed a motion for summary judgment, arguing that the five pages of documents responsive to plaintiff's request are exempt from disclosure under FOIA Exemptions 7(C) and 7(F).[1] (Def.'s Mem. of P. & A. In Supp. of its Mot. for Summ. J. ["Def.'s Mot."] at 2.) DOJ includes with its motion a *Vaughn* index identifying the documents withheld and explaining why disclosure would harm the interests protected by the claimed FOIA exemptions. (*Id.*); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Defendant has also submitted the five documents at issue for the Court's *in camera* review. Plaintiff argues that there is a public interest in these documents and that DOJ has failed to demonstrate that it is unable to segregate any exempt portions of the documents from non-exempt portions. (Pl.'s Mot. for Summ. J. ["Pl.'s Opp'n"] at 4-7.)

---

[1] Defendant no longer invokes FOIA Exemption 2 to protect the information sought by plaintiff. (Collins Decl. at 4 n. 3.)

## ANALYSIS

I. **LEGAL STANDARD**

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 89-813, at 3 (1965)). Thus, federal agencies must make their records promptly available to any person who makes a proper request for them unless the agency establishes that the information is appropriately withheld under one or more of the nine exemptions set forth in the statute. *See* 5 U.S.C. § 552(a)-(b). The nine exemptions are exclusive and should be narrowly construed. *Rose*, 425 U.S. at 361. When a challenge is made to an agency's decision to withhold information, the "burden is on the agency to sustain its action," and the district court is instructed to "determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). Even if some of the requested records contain exempt information, "the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552(b)).

"At the same time, of course, it must be recognized that FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government has in keeping certain information private, whether to protect particular individuals or the national interest as a whole." *Am. Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179, 186-87 (D.D.C. 2006). "As such, the exemptions must be given 'meaningful reach and application,'" *id.* at 187 (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)), as they "represent[] the congressional determination of the

types of information that the Executive Branch must have the option to keep confidential, if it so chooses." *Rose*, 425 U.S. at 361.

"FOIA cases appropriately may be decided on motions for summary judgment." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In deciding whether information has been properly withheld under FOIA exemptions, the Court may rely on affidavits or declarations from the agency. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Alternatively or in addition to such affidavits, the reviewing court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B). But "whether the Court relies on affidavits or declarations, an *in camera* review of the documents, or . . . both, an agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements.'" *Bigwood*, 484 F. Supp. 2d at 73 (second alteration in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## II. EXEMPTION 7

"In assessing whether records are compiled for law enforcement purposes [under Exemption 7], this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (quoting *Aspin v. Dep't of Defense*, 491 F.2d 24, 27 (D.C. Cir. 1973)) (internal citation omitted). The D.C. Circuit set forth "a two-part test whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there

is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Id.* at 177 (quoting *Pratt v. Webster*, 673 F.2d 408, 420, 421 (D.C. Cir. 1982)).

The records at issue here—communications to the BOP from the U.S. Attorney's office regarding an inmate's placement within the network of institutions under BOP control—are clearly related to the enforcement of federal laws. *See*, *e.g.*, *Butler v. Fed. Bureau of Prisons*, No. 05-643, 2005 WL 3274573, at * 3 (D.D.C. Sept. 27, 2005) ("The BOP is a law enforcement agency [with] the law enforcement function of protecting inmates, staff, and the community.") There is a direct relationship between the BOP's duty to ensure the safety of inmates, staff, and the community and its professional decisions as to where and how to house inmates. (Supplemental Decl. of Larry Collins In Resp. to Pl.'s Mot. for Summ. J. ["Second Collins Decl."] ¶ 9 (BOP staff charged with using "professional judgment . . . to ensure [an] inmate's placement in the most appropriate level institution.").) The documents plaintiff seeks, which include information from other law enforcement agencies not reflected in plaintiff's presentence report, were central to the BOP's attempt to "ensure [plaintiff]'s placement in the most appropriate level institution." (*Id.*) As such, the Court concludes the documents at issue were "compiled for law enforcement purposes" pursuant to Exemption 7.

### A. Exemption 7(C)

Exemption 7(C) provides protection for "records or information compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Before a court decides whether information falls within Exemption 7(C), it must first identify both the privacy interests that are at stake and the public interest in disclosure." *Computer Professionals for Social Responsibility v. U.S. Secret*

*Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996). Then, "the court must balance the privacy interests involved against the public interest in disclosure." *Safecard Servs., Inc.*, 926 F.2d at 1205. "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (internal quotation marks omitted). "That interest extends to 'persons who are not the subjects of the investigation [but who] may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation.'" *Computer Professionals*, 72 F.3d at 904 (quoting *Burge v. Eastburn*, 934 F.2d 577, 579 (5th Cir. 1991)).

Defendant has invoked Exemption 7(C) because if released, documents responsive to plaintiff's request would identify individuals other than plaintiff. (Def.'s Mot. at 9.) Based on its review of the documents, the Court agrees that the individuals named or otherwise identified in the documents have a substantial interest in maintaining their anonymity. Moreover, the Court discerns no public interest in the release of these documents to plaintiff. Plaintiff suggests that release of these documents serves the public's "strong interest in how the USDOJ . . . uses Management Variables (MGTV) to place inmates at a security level inconsistent with the inmates scored security level"[2] (Pl.'s Mot. at 5), but this argument is unavailing. The process by which the BOP calculates an inmate's security level, including the use of MVs, is publicly

---

[2] Plaintiff also states that he made his FOIA request because he "need[s] to know the substantive information received" from the AUSA office in order to "submit[] a formal request for administrative remedy to address the issue of his security level assignment though the BOP's administrative remedy program." (Pl.'s SMF ¶ 6). However, plaintiff's personal interest in these documents does not constitute public interest under Exemption 7(C). *See, e.g.*, *Engelking v. Drug Enforcement Admin.*, 119 F.3d 980, 980-81 (D.C. Cir. 1997) ("[A] requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA."); *see also Horowitz v. Peace Corps*, 428 F.3d 271, 278-79 (D.C. Cir. 2005) ("Plaintiff's need to obtain the information for a pending civil suit is irrelevant, as the public interest to be weighed has nothing to do with [plaintiff's] personal situation.").

available. *See generally* BOP Program Statement 5100.08, *Inmate Security Designation and Custody Classification*, ch. 5; *see id*. at ch. 5 at 5 (explaining that "[i]n circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines"). To the extent that plaintiff argues that the documents he seeks may reveal that the BOP has improperly calculated his own MV, plaintiff's "bare suspicion" that the BOP has acted improperly in the performance of its duties is insufficient to overcome the privacy interests in these documents. *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Plaintiff has failed to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.*; *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that [government agents] have properly discharged their official duties."). As such, the Court sustains the Agency's claim to Exemption 7(C) regarding names and other identifying information in the documents.

    **B. Exemption 7(F)**

Exemption 7(F) protects law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This exemption "affords broad protection to the identities of individuals mentioned in law enforcement files," *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996), including any individual "reasonably at risk of harm." *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 124 (D.D.C. 2008) (quoting *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006)). Courts reviewing assertions of Exemption 7(F) "may inquire 'whether there is some nexus between disclosure and possible harm,'" *id.* (quoting *Linn v. United States Dep't of Justice*, No. 92-1406,

1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995)), and defer, within limits, "to the agency's assessment of danger." *Id.*

The Court agrees with the DOJ that release of the documents sought by plaintiff could result in the identification of third parties, including the source(s) of the information in the documents and could lead to retaliation against those individuals. (*See* Def.'s Mot. at 13.) And based on its review of the documents, the Court concludes that there is a sufficient nexus between their disclosure and possible harm to these third parties. As such, the Court sustains defendant's Exemption 7(F) claim.

### C. Segregability

Having found that defendant has properly asserted Exemptions 7(C) and 7(F), the Court must consider whether the documents contain non-exempt portions that can be provided to plaintiff. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record[.]"); *see also Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir.1977) ("non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions"). Having reviewed the documents *in camera,* the Court is satisfied that no non-exempt portions of the records are reasonably segregable. Although there are a few words and phrases that may be non-exempt, they are inextricably intertwined with exempt information and would be, standing alone, meaningless.

## CONCLUSION

For the reasons set forth above, the Court shall GRANT defendant's motion for summary judgment and DENY plaintiff's cross-motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: May 11, 2010